WINFREE, Justice,
with whom. STOWERS, Justice, joing, concurring in part. |
The syperior court made two legal rulings underlying the declaratory and injunctive relief entered in favor of the Central Council of Tlingit and Haida Indian Tribes of Alaska (the Tribe). First, relying on our seminal holding in John v. Baker that. Alaska tribes retained non-territorial-based inherent sovereign authority to adjudicate custody disputes over children who are tribal members or eligible for tribal membership, [1] it ruled that this inherent sovereign authority encompassed adjudication of child support disputes over tribal children. even if custody were not in dispute. Second, it concluded that with respect to child support orders issued by the Tribe, the State of Alaska was required to comply with the Uniform Interstate Family Support Act (UIFSA) and related federal and state regulatlons Today the court affirms those legal rulings and the associated injunctive relief, and I join that part of its decision. {C
But the court unnecessarily moves further and reaches out to provide an advisory opinion [2] on yet another legal issue: whether a tribal court with non-territorial-based inherent sovereign authority to adjudicate matters involving tribal children necessarily has adjudicatory authority: (subject to some unstated personal jurisdiction limitations) over non-tribal-member parents. This issue is not necessary to the decision before us, there is no specific controversy in this case necessitating a decision on the issue, there is no party in this case truly advocating for the *276 interests of non-member parents' on the issue, and neither the Tribe nor the United States considered the issue worthy of significant briefing;. I therefore do not join the court's advisory opinion.[3]
I start with the basic proposfmon that this case does not involve an actual child support dispute between the Tribe and a non-member parent based on an allegation that the Tribe lacked adjudicatory authority over the parent. This case involves the Tribe's demand that the State comply with UIFSA in connection with the Tribe's child support orders. The superior court recognized that underiits ruling a tribal court "could claim jurisdiction" to enter a child support order against a nonmember parent, but believed personal jurisdiction considerations would define the contours of a tribal court's authority and that further refinement was unnecessary ab this time.
"On appeal the State continues to argue that the Tribe does not have adjudicatory authority over non-member parents. | The Tribe and 'the United States respond that this case does not raise any real dispute about tribal court adjudicatory authority over non-member parents and that the potential involvement of non-member parents in some cases does not divest the Tribe of its otherwise inherent sovereign authority to adjudicate child support for tribal children. I agree with the Tribe and the United States. And I find it ironic that they-albeit backhandedly-are willing to give non-member parents a future opportunity to be heard on the Tribe's adjudicatory authority while the court is so anxious to decide the issue today without ever hearing from a non-member parent.
This case comes to us muck like State v. Native Village of Tanana,[4] involving the Indian Child Welfare Act (ICWA).[5] In that case we concluded that federally recognized Alaska Native tribes that had not reassumed exclusive adjudicatory jurisdiction still have concurrent jurisdiction to initiate ICWA-de-fined child custody proceedings-both inside and outside of Indian country-and are entitled to gll the rights and privileges of Indian tribes under ICWA, including full faith and credit with respect to their ICWA-defined child custody orders.[6] But with an appropri«ate exercise of judicial restraint, we rejected the State's entreaty to more particularly define the contours of tribes' adjudicatory jurisdiction, including their adjudicatory authority over Indian children's[7] non-member parents:
The nature and extent of tribal jurisdiction in any particular case will depend upon a number of factors, including but not limited to: (1) the- extent of the federal recognition of a particular tribe as a sovereign; (2) the extent of the tribe's authority under its organic laws; (8) the tribe's delegation of authority to its tribal court; and (4) the proper. exercise of subject matter and personal jurisdiction. Among the many issues we are not deciding today are: ... (2) the extent of tribal jurisdiction over nonmember parents of Indian children; and . (8) the extent of tribal jurisdiction over Indian children or member parents who «have limited or no' contact with the tribe. We therefore do not need to address the varied hypothetical situations posited by the State asicreating difficult jurisdictional questions-we leave those for later determinations under specific factual cireum-stances.[8]
I see no reason to dlspense with this judicial restraint today.
'The context of this casé-a political jurisdictional battle between two sovereigns-prowdes an addltlonal reason for judicial re *277 straint. .As outlined in Native Village of Tanana, the State's position on the nature and extent of tribal sovereignty has waxed and waned depending upon the politics of the day. [9] But jurisdictional battles between the State and Alaska Native tribes are intergovernmental and generally intended to delineate exclusive and concurrent jurisdiction boundaries and flesh out related concepts like full faith and credit for tribal court orders. In those battles-such as in this case and in Native Village of Tanana-the State and the tribes are the primary interested parties. Here, for example, the State's argument that the Tribe lacked any adjudicatory authority over non-members (with or without consent) to enter child support orders was not out of a concern about non-members forced to appear in tribal courts without consent, but rather out of a concern for its own budget-it simply did not want to have to enforce any of the Tribe's child support orders-and as a result of the litigation the State now will, as a general matter, have to enforce the Tribe's child support orders.
On the other hand, a specific non-member parent's objection to a tribal court's adjudicatory authority to issue a child support order would place the issue in a very different factual and legal context,. It is not so clear to me that the State would be an interested party to that specific dispute although, like the United States often does in Indian jurisdictional disputes, the State could participate as an amicus curiae. And given Alaska's unique Indian law environment-where inherent sovereign authority is for the most part untethered to Indian country-existing U.S.; Supreme Court precedents seem an imperfect road map for determining whether a tribal court has such adjudicatory authority.[10]
Perhaps this distinction can be made more clear with the following comments and questions, The choice to seek U.S. Supreme Court review of today's decision belongs solely to the State, not to a non-member parent of a tribal child. That deciston-like all previous State decisions regarding tribal sovereignty-will be primarily a political decision, based on how the State wishes to co-exist with sovereign tribes within its boundaries. Who in this case represents the legal interests of non-member parents of tribal children? No one. I do not find this particularly satisfying for a court that prides itself on procedural fairness.
In my view whether tribal courts have adjudicatory authority over nonmember parents of tribal or tribal-eligible children with respect to matters involving those children-when those matters arise untethered to Indian country-is a matter best left for a day when we actually have before us a dispute - between a tribe and a nonmember parent. Although the court's ultimate conclusion certainly is not implausible, [11] I do not join it or its underlying analysis.

. 982 P.2d 738, 748-49 (Alaska 1999).

. Cf. Laverty v. Alaska, R.R. Corp., 13 P.3d 725, 729 (Alaska 2000) (noting Alaska's Declaratory Judgment Act (AS 22.10.020(g)) does "not open the door for hypothetical adjudications [or] advisory opinions").

. If today's decision is not dictum, then it seems clear-at least under the gourt's interpretation of federal law-that whenever a tribal court has adjudicatory authority over a tribal or tribal-eligible child it automatically has adjudicatory authority over the child's non-member parent in any matter involving the child without regard to, or a required nexus with, Indian country.

. 249 P.3d 734 (Alaska 2011).

. 25 U.S.C. §§ 1901-1963 (2012).

. Native Vill. of Tanana, 249 P.3d at 751.

. See 25 U.S.C. §1903(4) (defining "Indian child").

8. Native Vill. of Tanana, 249 P.3d at 751-52 {emphasis added). If today's decision is not dictum, then it seems clear the court now has answered the noted issue left open in that case.

. Id. at 744-47.

. With this in mind I make three casual observations. about the court's decision. First, I am dubious of any analysis about tribal court adjudicatory authority over non-members that begins by rejecting Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 LEd.2d 493 (1981), as the fundamental lens for the analysis. Second, the court conspicuously avoids discussing substantial case law indicating that the Montane exceptions to the presumption that tribal courts do not have adjudicatory authority over nonmembers relate only to non-member conduct within reservations, which are virtually non-existent in Alaska. See, e.g., Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316, 327-35, 128 S.Ct. 2709 (2008) (explaining Montana's general principle's scope, specifying that "Montana and its progeny permit tribal regulation of non-member conduct inside the reservation that implicates the tribe's sovereign interests"). Finally, under a Montana exception a non-member may consent to tribal court jurisdiction even if the tribal court otherwise would have | no adjudicatory authority over the non-member. 450 U.S. at 565, 101 S.Ct. 1245. It is difficult to understand why the nonmember parent's consent to tribal court adjudicatory authority in John v. Baker, 982 P.2d 738, 743 (Alaska 1999), now-in retrospect-demonstrates that tribal courts have adjudicatory authority over all nonmember parents of tribal children regardless of consent.

. Cf. Simmonds v. Parks, 329 P.3d 995, 1017-22 (Alaska 2014) (concluding tribal court's non-territorial-based claim of adjudicatory authority to *278 terminate non-member parent's parental rights > to tribal child was "plausible" so that non-member parent was required to exhaust tribal court remedies before seeking state court relief).